

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

February 14, 2019

Deborah Boardman, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

    Re:    United States v. Antonio Wright,
            Criminal #: JKB-18-0158

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, February 15, 2019, at 5:00 p.m., it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offenses of Conviction

1. The Defendant agrees to plead guilty to Counts One, Two and Count Four of the Indictment now pending against him, which charge him with Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b) (Count One) and Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Counts Two and Four). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

## Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One (Coercion and Enticement in violation of Title 18, United States Code, Section 2422(b):

That on or about the dates specified in Count One of the Indictment, in the District of Maryland, and elsewhere, the Defendant:

1

      a.    Knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

      b.    The defendant believed that such individual was less than eighteen (18) years of age; and

      c.    That the Defendant could have been charged with a criminal offense for engaging in the specified sexual activity (including production and attempted production of child pornography as charged in Counts Two and Four of the pending indictment).

<u>Counts Two and Four (Production of Child Pornography, in violation of 18 U.S.C. § 2251(a))</u>:

That on or about the dates specified in Counts Two and Four of the Indictment, in the District of Maryland, and elsewhere, the Defendant:

      d.    Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

      e.    For the purpose of producing a visual depiction of such conduct; and

      f.    The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

Penalties

3.    The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Imprisonment | Maximum Imprisonment | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2422(b) | 10 years | Life | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |
| 2 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |
| 4 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

Rev. August 2018

      a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

      b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

      c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

      d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.      Collection of *Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

      g.      Additional Special Assessment: The Defendant must also pay an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014.

<u>Sex Offender Registration</u>

4.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.  The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a.  If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

4

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

        6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

        7.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

Count 1 – Coercion and Enticement:

        a.      The base offense level for coercion and enticement is 28 pursuant to U.S.S.G. § 2G1.3(a)(3).

        b.      Pursuant to U.S.S.G. § 2G1.3(b)(2)(B), there is a two (2) level increase because a participant unduly influenced a minor to engage in prohibited sexual conduct. (Subtotal: 30).

        c.      Pursuant to U.S.S.G. § 2G1.3(b)(3)B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce or facilitate the travel of, the minor to engage in prohibited sexual conduct. (Subtotal: 32).

        d.      This Office and the Defendant agree that the following sentencing guidelines factors is in dispute: Whether pursuant to U.S.S.G. § 2G1.3(b)(4)(A), there is a two

5



(2) level increase because the offense involved the commission of a sex act or sexual contact. (Subtotal: 32 or 34).

      e.     Pursuant to U.S.S.G. § ~~2G2.3(e)(1)~~ 2G1.3(c)(1), the guideline for production of child pornography is applied because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and the resulting offense level under § 2G2.1 is greater than 34.

Count 2 – Production of Child Pornography:

      f.     The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

      g.     Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

      h.     Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

Count 4 – Attempted Production of Child Pornography:

      i.     The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

      j.     Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34).

      k.     Pursuant to U.S.S.G. § 2G2.1(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. (Subtotal: 36).

      l.     This Office and the Defendant agree that the following sentencing guidelines factors is in dispute: Whether pursuant to U.S.S.G. § 2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. (Subtotal: 36 or 38).

Grouping:

      m.     Pursuant to U.S.S.G. §§ 3D1.2(d) and 3D1.4, sexual exploitation of the same minor victim on different days does not group, there are therefore 2 units, and the highest offense level (36 or 38) is increased by two (2) levels. (Subtotal: 38 or 40).

      n.     This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent

prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Subtotal: 35 or 37).

### Chapter Four Enhancement:

8. This Office and the Defendant agree that pursuant U.S.S.G. § 4B1.5(b) and Application Note 2, the instant offense of conviction is a covered sex crime.

9. This Office and the Defendant agree that the following sentencing guidelines factors is in dispute: Whether pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the defendant engaged in a pattern of activity involving prohibited sexual conduct. Thus, the final anticipated offense level is 35/37 (Defendant) or 40/42 (Government).

10. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

12. At the time of sentencing, this Office and the Defendant reserve the right to recommend any lawful sentence using the factors outlined at 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release); except as follows:

        i. The Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an offense level of 37.

        ii. This Office reserves the right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an offense level of 42.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

14.   a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

    b. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities including:

        i. The following items originally seized by law enforcement authorities from the Defendant's on March 6, 2018:

   1. ZTE mobile phone, Model: Z981, S/N: 32977369359, and charger;
   2. TMobile watch;
   3. Western Digital hard drive, S/N WMAM8L792604; and
   4. Gateway desktop computer, S/N MMC2ZRN0012406D6E43.

   c.   The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

   d.   The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

   e.   The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

15.   The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Defendant's Conduct Prior to Sentencing and Breach

16. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

   b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

17. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____

Paul E. Budlow
Assistant United States Attorney


I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3/13/19
Date

Antonio Wright


I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/13/19
Date

Deborah Boardman

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Antonio Wright ("Wright"), age 42, is a resident of Baltimore, Maryland. As detailed below, on at least two occasions, Wright used an online social network to induce Jane Doe, a minor female, to produce images of herself engaging in sexually explicit conduct.

The defendant was in a relationship with Jane Doe's mother from at least 2009, when Jane Doe was 4 years old. The defendant and Jane Doe's mother had a daughter in December 2009, and the defendant lived together intermittently with Jane Doe's family until the Spring of 2017. In the fall of 2017, Jane Doe was living with a foster family in Baltimore City.

Starting no later than August 2017, the defendant and Jane Doe communicated using Facebook. The communication included text messaging, images, and audio messages. The messages frequently included the defendant's declaration of love for Jane Doe. The defendant also told Jane Doe that they eventually should get married. The defendant instructed Jane Doe not to tell others that she has an "older man for a boyfriend" and that he will get in trouble if they are found out. The defendant also used Facebook to communicate with Jane Doe in graphic detail about sexual activity with Jane Doe, and to cause and attempt to cause Jane Doe to produce sexually explicit images of herself and send the images to Wright. The messages included the following:

- On December 12, 2017, the defendant sent a photo of Jane Doe to Jane Doe with the caption, "I wanna fuck her wit that crown on and nothing else."

- On December 12, 2017, the defendant sent a photo of Jane Doe to Jane Doe with the caption, "I know she sucks a mean dick."

December 23, 2017:

During explicit Facebook chats on the evening of December 23, 2017, between 7:22 p.m. and 7:46 p.m., the defendant explicitly asked Jane Doe to produce nude and sexual images of herself as follows:

- I need a good fuckin [7:22 p.m.]
- I need my dick to be road well!
- Are you up for the job

1

- I want my new pic of you.u deleted my last one I want a full body pic wit you butt ass nacked!
- I want it clear too
- Full body
- Show me some wet and juicy pics
- Front and back
- Zoom in
- Closer [7:43 pm]

During this exchange, Jane Doe sent two images of herself to the defendant. The images appear identical, and depicted Jane Doe, nude, from the shoulders to just below her genitals. At 7:48 p.m., Jane Doe asked the defendant if he received the images and he did not immediately respond. There was no communication between Jane Doe and the defendant until the defendant responded at 8:23 p.m., 50 minutes after the last text

- Your face wasn't on there and I didn't get my back view but anyway what are you doing now. [8:23 p.m.]

December 24, 2017:

The defendant and Jane Doe communicated on Facebook about their relationship starting at 11:00 p.m. on December 23, 2017. At 12:12 a.m. on December 24, 2017, the defendant texted "Are you ready to talk to me now", the defendant and Jane Doe then shared a video chat, followed by a sexually explicit text conversation. Beginning at approximately 12:44 am, the defendant again asked Jane Doe for sexually explicit images, including images of her genitals, as follows.

- And I'm still waiting on my ass shot but you scared [12:44 a.m.]
- Talk is cheap:
- Show in prove
- Okay prove me wrong
- Shut me up [12:48 a.m.]

[Jane Doe sent an image to defendant of what appears to be her exposed buttocks, although the image is dark.]

- Too close can't really tell what dat is
- Just take a picture of dat pussy
- One of the clit and one of you playing with it
- No hair pussy [12:56 a.m.]

2

Immediately following the text, "No hair pussy", the defendant sent Jane Doe an image of his exposed penis. Approximately five minutes later, the defendant and Jane Doe shared a Facebook video chat for 3 minutes and 47 seconds.

\* \* \*

On December 24, 2017, between approximately 2:03 a.m. and 2:07 a.m., WRIGHT left numerous audio messages for Jane Doe on Facebook, including the following:

- I'm going to get locked up messing with you.

- Plus you gotta stop talking so much man, you be like, really running your mouth a lot. You know what I mean, and when you do that, that'll get us caught.

- Because, I just don't want nothing to happen, nobody to find out about none of this shit. You know what I'm saying, cause, for real, like I told you one time before, it ain't cool, but...I can't help it.

- But I love you and I don't want to stop what we doing, but, you got to take it easy yo, you cant just be bragging that you got a older man for a boyfriend and all this other shit, that'll get a nigga popped.

Initiation of the Investigation:

On or about January 4, 2018, Baltimore City schools were closed due to snow. The defendant sent a message to Jane Doe that stated, "Baltimore City schools are closed today panda -- so I just want you to know I know okay call me well talk love you." The defendant spent time with Jane Doe at his residence, and took her home later that day.

On the afternoon of January 4, 2018, Jane Doe's foster mother, Miriam Kuntz, noticed that Jane Doe did not come home when she expected her. When she was unable to locate Jane Doe, Ms. Kuntz found the tablet that Jane Doe was using to communicate with the defendant, and observed some of the sexually suggestive chats and images. After the defendant brought Jane Doe home that afternoon, Ms. Kuntz filed a report with the Maryland Department of Human Services, who referred the case to Child Protective Services for investigation. Jane Doe was forensically interviewed on January 10, 2018.

Jane Doe's tablet and the Facebook accounts of Jane Doe and the defendant were searched, and the images, audio messages, and text messages described above were located.

Materials in Interstate Commerce & Transportation of Images in Interstate Commerce:

The defendant knowingly used a mobile phone and the internet, and knowingly caused Jane Doe to use her tablet and the internet, to induce, entice and coerce Jane Doe to engage in the above-reference sexual activity. The defendant therefore had reason to know that the images would be transported in interstate commerce, and that the images would be produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce. The use of the mobile phones and the internet constituted the use of a facility of interstate commerce.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_____                                    _____
Date                                                              Antonio Wright

I am Mr. Wright's attorney. I have carefully reviewed the statement of facts with him. He acknowledges it is true and correct and he knowingly and voluntarily agrees to it.

3/13/19                                                    _____
Date                                                              Deborah Boardman, Esq.
                                                                      Counsel for Antonio Wright

4